IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEONEL NINO,<br>    PLAINTIFF, | §<br>§<br>§ | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-100-A |
| | § | |
| NANCY A. BERRYHILL,<br>ACTING COMMISIONER OF<br>SOCIAL SECURITY,<br>    DEFENDANT. | §<br>§<br>§<br>§ | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Plaintiff Leonel Nino ("Nino") filed this action pursuant to section 405(g) and 1383(c) of Title 42 of the United States Code for judicial review of the Commissioner of Social Security's final decision denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). In October 2013, Nino protectively filed an application for SSI, alleging his disability began on October 7, 2013. (Transcript ("Tr.") 12, 142-50.) After his application for SSI was denied both initially and on reconsideration, Nino requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 12, 85-97, 100-02.) The ALJ held a hearing on November 2, 2015 and issued a decision on February 3, 2016, in which the AJL found Nino

1

was not disabled because there were jobs that existed in significant numbers in the national economy that he could perform. (Tr. 12-21, 4-25, 30-60.) After the Appeals Council denied Nino's request for review on December 13, 2016, Nino filed this civil action seeking review of the ALJ's decision. (Tr. 1-3.)

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416 (SSI). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920.

First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See* 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing. 20 C.F.R. Pt. 404 Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* § 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and

past work experiences. *Id.* § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Circ. 1999).[1] At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. § 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* § 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 416.920(a)(4)(v).

to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In his brief, Nino presents the following issue:

1. Whether the ALJ erred by either classifying Plaintiff's residual functional capacity ("RFC") as light instead of sedentary or by failing to acknowledge that the RFC finding describes an RFC that falls between two exertional levels.

(Plaintiff's Brief ("Pl.'s Br.") at 1.)

### IV. ALJ DECISION

In his February 3, 2016 decision, the ALJ concluded that Nino was not disabled within the meaning of the SSA. (Tr. 14.) In making his determination, the ALJ followed the five-step sequential evaluation process set forth above. (Tr. 12-21.) At Step One, the ALJ found that Nino had not engaged in substantial gainful activity since October 7, 2013, the date he filed his application for SSI. (Tr. 14.) At Step Two, the ALJ held that Nino suffered from the following severe impairments: (1) cervical degenerative disc disease ("DDD"); (2) mild degenerative joint disease ("DJD") of the right shoulder; (3) DJD of the left shoulder; (4) lumbar DDD; (5) obesity; (6) anxiety; and (7) depression. (Tr. 14.) At Step Three, the ALJ found that none of Nino's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 15-17.) As to Nino's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can sit at least 6 hours, stand and/or walk 2 hours. He can never climb ladders, ropes or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He can occasionally reach overhead in the bilateral upper extremities. Mentally, the claimant can understand, remember and carry out simple instructions and tasks, can tolerate occasional interaction with the public, coworkers and supervisors.

(Tr. 17 (emphasis omitted).)

The ALJ found, at Step Four, that Nino had no past relevant work. (Tr. 20.) At Step Five, the ALJ found that there were other jobs that existed in the national economy that Nino could perform. (Tr. 20-21.) Accordingly, the ALJ found that Nino was not disabled. (Tr. 21.)

## V. DISCUSSION

### A. RFC Determination

In his brief, Nino argues that the ALJ erred by either classifying his RFC as light[2] instead of sedentary[3] or by failing to acknowledge that his RFC fell between two exertional levels.[4] (Pl.'s Br. at 3.) Specifically, Nino argues:

> [T]he ALJ found that Plaintiff could perform "light work as defined in 20 C.F.R. 416.967(b)," except that he was limited to standing and/or walking for 2 hours of an 8-hour workday. *See again* Tr. 17. The ALJ then denied Plaintiff's claim based

---

[2] Light work is defined as follows:

> Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

[3] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

[4] The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id.* at *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.* "'Occasionally' means occurring from very little up to one-third of the time." *Id.* at *5. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Id.*

> on the Medical Vocational Guidelines, or Grid Rules, applicable to "light work." Tr. 20. However, as Plaintiff will show[,] the ALJ's designation of the RFC finding as being for light work is contrary to Agency policy; and, this error is not "harmless" because Plaintiff is inarguably "disabled" by operation of the sedentary Grid Rules as of his 50th birthday.

(Pl.'s Br. at 4.) Nino states that "light work" requires a "great deal of standing and walking" and light work cannot be performed while standing and walking two hours per day as erroneously found by the ALJ. (Pl.'s Br. at 4 (emphasis omitted).) Nino further states:

> [Based on the definitions of sedentary and light work], even if a claimant can perform *some* tasks associated with "light work" (such as lift up to 20 pounds), an RFC with a limitation to standing and walking for only 2 hours (which also necessarily limits lifting and carrying to 2 hours as well) does not describe a person capable of performing the most essential difference between light work and sedentary work, unless they are found to be able to use arm or hand controls frequently throughout the day. Thus, as stated above, the issue in this case is not whether substantial evidence supports the RFC, but rather whether inconsistencies in the RPC [sic] itself, and their concomitant consequences warrant remand.
>
> . . . Here, Plaintiff is *inarguably disabled* if his RFC is correctly classified as sedentary; applying the same "vocational factors" of age, education and lack of relevant work at the sedentary grid rule, Grid Rule 201.12 directs a finding that he is "disabled." 20 C.F.R. § 404, Subpt. P, App 2, 201.12.[]
>
> . . . And, the limitation to standing/walking only 2 hours in 8 set forth in the ALJ's RFC finding is consistent *only* with a finding Plaintiff capable of performing sedentary work.
>
> . . . .
>
> Assuming that an RFC to stand/walk 2 hours in 8 can correctly be described as "light work," *the ALJ still erred*. As noted above, characterization of an RFC as "sedentary" or "light" is a precursor to determining whether a claimant is entitled to benefits pursuant to the Agency's Grid Rules. 20 C.F.R., Part 404, Subpt. P, App. 2. As already described above, the ALJ's RFC finding describes more lifting requirements than the Agency's definition for sedentary work requires, but far less capacity for standing/walking than the definition of light work (noting, again, that there is not even an allegation in this case that the jobs relied upon by the ALJ require the use of hand and/or foot controls). Thus, at best, the ALJ's RFC must be described as one which "falls between two exertional levels."
>
> Pursuant to SSR 83-12, when a claimant's RFC falls between the Agency's definitions for light and sedentary work and the distinction is outcome

determinative, an ALJ may not simply conclude that the higher, "light" RFC determination is appropriate without first determining whether there has been a "significant reduction" in the claimant's ability to perform light work. *Id.*[] *If so, then the lower Medical-Vocational Rule must be applied to find the claimant disabled. Id.* Significant for the purposes of considering this issue is the fact that *the Agency's own example* for how to apply the rule in SSR 83-12 states that a limitation to standing/walking for 4 hours out of 8 "significantly erodes the occupational base of light work, and so we are using a sedentary rule as a framework for determination." Program Operations Manual System (POMS) 25015.006(E)(1)(d).[5] Plainly, then consistent with the Agency's own explanation of this rule even *less ability* to stand/walk, as in this case, can only be described also as a significant reduction of Plaintiff's ability to perform light work; therefore, the sedentary Grid Rule should have been applied to find Plaintiff "disabled," as a matter of law.

Despite having called a vocational expert to testify, the ALJ did not inquire with respect to this outcome determinative issue (whether the jobs identified represent a significant erosion of the light job base), and therefore cannot be found to have met his step 5 burden of proof. Agency policy directs in such cases that an ALJ must "always" explain the basis for these conclusions. POMS DI 25025.015(D)[6] (emphasis added); *see also* SSR 13-2p . . . .

(Pl.'s Br. at 5-8 (footnotes added).)

---

[5] The Court notes that it has looked up this section in the POMS, which deals with borderline age, and cannot find the example referenced by Nino in his brief.

[6] DI 25025.015(D) of the POMS states as follows:

D. Exertional capacity falls between two rules with different conclusions

Determining whether a claimant is disabled is a more difficult judgment when his or her exertional capacity falls in the middle of two rules and the rules direct opposite conclusions. In this situation apply the:

- higher-numbered rule and find the claimant not disabled if you conclude the claimant has a slightly reduced capacity for the higher level of exertion; or

- lower-numbered rule and find the claimant disabled if you conclude the claimant has a significantly reduced capacity for the higher level of exertion.

. . . .

**IMPORTANT**: Always explain the basis of your conclusions.

POMS, § DI 25025.015(D).

In this case, as set forth above, the ALJ found, as relevant here, that Nino had the RFC to perform light work as defined in 20 C.F.R. 416.967(b) except that he, *inter alia*, can sit at least six hours and stand and/or walk two hours. In making such a determination, the ALJ stated, *inter alia*":

> [H]e has several physical problems and DDS already found a restrictive residual functional capacity to accommodate multiple severe impairments below. The above residual functional capacity is similar to the reconsideration opinion but I added restrictions to the DDS mental residual functional capacity.
>
> As for the opinion evidence, I gave considerable weight to the initial DDS physical reviewers who recommended light with frequent, occasional and unlimited postural and occasional right overhead reaching. I give more weight to the reconsideration reviewers who recommended light with two hours standing and/or walking combined, frequent/occasional postural and occasional overhead reaching, because the totality of the evidence, discussed herein, supports further restrictions in standing and/or walking.
>
> . . . .
>
> Again, the claimant gave several exaggerated statements at the hearing. This testimony, along with his relatively poor work history, along with evidence of poor effort on examination, significantly erode his subjective statements regarding his functional limitations. Nonetheless, the claimant does have several physical and mental impairments that are documented in the record, and the state agency accounted for these to a large extent in their assessments. However, based on my review of the totality of the evidence, including updated evidence, I have added limitations to those proposed by the state agency.

(Tr. 19-20.) The ALJ also noted that Nino's counsel "argued that the claimant is limited to less than sedentary and would be disabled by direct application of the Medical Vocational Guidelines." (Tr. 17.)

Moreover, the ALJ, at Step Five, further stated:

> In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the

8

claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20 and Rule 202.13. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative unskilled light occupations such as:

- Small Product Assembler I – 706.684-022 with 266,000 Jobs in the national economy;
- Bench Assembler – 706.684.042 with 207[,]000 jobs in the national economy;
- Folding Machine operator – 369.686-010 with 56[,]000 in the national economy.

(Tr. 20-21.)

As stated above, Nino maintains that if the ALJ had correctly limited his RFC to sedentary work (instead of light work with limitations) then, pursuant to Grid Rule 201.12, he should have been found to be disabled. However, Nino's position that his inability to perform the full range of light work because he is limited to standing and walking for two hours in an eight-hour workday and, thus, should have been given an RFC limited to sedentary work has been rejected on multiple occasions.[7] Moreover, as stated by the court in *Warren v. Astrue*, No. 6:09-CV-417, 2011 WL

---

[7] *See, e.g., Valverde v. Berryhill*, No. EP-17-CV-00142-ATB, 2017 WL 4853812, at *3 (W.D. Tex. Oct. 25, 2017) ("The Court rejects Plaintiff's position that the inability to perform the full range of light work [because, Plaintiff, *inter alia*, can only stand and walk for two hours in an eight-hour workday,] required the ALJ to find that Plaintiff could only perform sedentary work."); *Ontiveros v. Colvin*, No. EP-14-CV-158-ATB, 2016 WL 1688028, at *5 (W.D. Tex. Apr. 26, 2016) ("The Court also rejects Plaintiff's position that the inability to perform the full range

3444268, at *1 (E.D. Tex. Aug. 5, 2011), "this argument gives short shrift to the ALJ's use of a testifying vocational expert . . . [because] Plaintiff's residual functional capacity ("RFC") fell between the analytical structure of the two grid rules, as outlined in Social Security Ruling ("SSR") 83-12, 1983 WL 31253 (S.S.A.[] 1983)."

SSR 83-12, which is heavily relied upon by Nino in support of his arguments, recognizes that "[i]n some instances, an individual can do a little more or less than the exertion specified for a particular range of work." SSR 83-12, 1983 WL 31253, at *1. In these cases, SSR 83-12 "sets out the process of using the numbered rules in adjudicating those claims in which the exertional components of the RFC are less or greater than those of a specifically defined exertional range of work." SSR 83-12, 1983 WL 31253, at *1. As relevant here, when the exertional level falls between two GRID rules that direct a conclusion of disabled at the lower exertional level and not disabled at the higher exertional level, SSR 83-12 states the ALJ should consider as follows:

    a. An exertional capacity that is **only slightly reduced** in terms of the regulatory criteria **could** indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

    b. On the other hand, if the exertional capacity is **significantly reduced** in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and **could** justify a finding of "Disabled."

    c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational specialist] assistance is advisable for these types of cases.

---

of light work required the ALJ to find that Plaintiff could perform sedentary work"); *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *10 (N.D. Tex. June 2, 2014).

10

SSR 83-12, 1983 WL 31253, at *2-3 (emphasis added). In such cases where the "extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource." *Id.* at *2.

In this case, it is clear that the ALJ recognized that "the claimant's ability to perform all or substantially all of the requirements of [light] work ha[d] been impeded by additional limitations." (Tr. 21.) Thus, the ALJ, as directed by SSR 83-12, consulted a vocational expert ("VE") to determine whether there were any jobs that existed in the national economy that Nino, based on his age, education, work experience, and RFC, could perform. (Tr. 21.) At the hearing before the ALJ, the VE testified that, given all these factors, Nino would be able to perform the three unskilled light occupations of small product assembler I, bench assembler, and folding machine operator. (Tr. 21; *see* Tr. 51.) The ALJ specifically emphasized to the VE that claimant could stand and/or walk for only two hours, noting that such a limitation was a significant restriction in the claimant's ability to stand and/or walk. (Tr. 51.) The VE noted that the three light work jobs he listed would fit such a limitation because they would allow "an individual to work off a stool to work." (Tr. 51.)

While the Court recognizes that there is some non-binding authority that reaches a different result,[8] the Court finds, based on the specific facts in this case, that the ALJ did not err in his RFC findings and subsequent Step Five findings. As set forth above, it is clear that the ALJ was aware of Nino's argument that he should be limited to sedentary, not light, work, which would have resulted in a finding of disabled pursuant to the Grid Rules, as well as the applicable rules and regulations regarding sedentary and light work. However, based on the evidence before the ALJ,

---

[8] *See Villarreal v. Colvin*, 221 F. Supp. 3d 835 (W.D. Tex. 2016); *Ferdin v. Colvin*, No. SA-15-CA-29-DAE, 2015 WL 7767980 (W.D. Tex. 2015).

including the testimony of the VE, the ALJ made an RFC determination and determination at Step Five that was supported by substantial evidence. Thus, remand is not required.[9]

Furthermore, even if the ALJ erred in not following the specific procedural requirements of SSR 83-12 or the POMS, the ALJ's error warrants remand only if Plaintiff was prejudiced by the error. *See Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000); *Bornette v. Barnhart,* 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (violation of a ruling is procedural error warranting reversal "only when [the] complainant affirmatively demonstrates ensuant *prejudice*").[10] In this case, the Court does not find such prejudice because the ALJ clearly considered and rejected Plaintiff's argument that he was capable of only performing sedentary work and substantial evidence supports the ALJ's RFC determination as well as his determination at Step Five. Moreover, the language in SSR 83-12 providing guidance to the ALJ on what to do when a claimant's exertional capacity falls between two rules is "discretionary but not mandatory." *Warren,* 2011 WL 3444268, at *2. In addition, as to the POMS, "[a]lthough [it] provides some insight, case law supports the conclusion that POMS 'has no legal force and does not bind the Court.'" *Calvert v. Colvin,* No. EP-14-CV-404-ATB, 2016 WL 3906821, at *4 (W.D. Tex. July 14,2016) quoting *Kolb v. Colvin,* Civ. A. No. 13-5085, 2014 WL 5040737, at *5 n.66 (E.D. La. sept. 30, 2014)); *see Davis v. Sec'y of Health & Human Servs.,* 867 F.2d 336, 340 (6th Cir. 1980) ("Although the POMS is a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims[, it, while persuasive,] does not have the force and effect of law

---

[9] *See, e.g., Hale v. Colvin,* No. 1:13-CV-132-C, 2015 WL 736165, at *4 (N.D. Tex. Feb. 20, 2015); *Reed v. Comm'r of Soc. Sec.,* No. 3:14-CV-81-SSA, 2014 WL 6634625, at *3 (N.D. Miss. Nov. 24, 2014); *Warren,* 2011 WL 3444268, at *1-4; *see also Ewing,* 2014 WL 2464765, at *10 ("SSR 83-12 specifically states that an individual is required to consult a vocational source where, as here, an individual's RFC does 'not coincide with the definition of any one of the ranges of work as defined in section[] . . . 416.967.")

[10] "A claimant establishes prejudice by showing that adherence to the ruling might have led to a different decision." *Bornette,* 466 F. Supp. 2d at 816.

. . . .") As a handbook representing internal policy, the POMS simply informs the courts of present operating procedures of SSA employees. Because any error by the ALJ was not prejudicial, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above the specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 12, 2018** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendations. It is further **ORDERED** that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 29, 2018.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE